NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PERCY OCTAVIO WINGO,                    )
                                        )
            Appellant,                  )
                                        )
v.                                      )      Case No. 2D13-4544
                                        )
STATE OF FLORIDA,                       )
                                        )
            Appellee.                   )
_____)

Opinion filed February 20, 2015.

Appeal from the Circuit Court for Polk
County; Michael E. Raiden, Judge.

Howard L. Dimmig, II, Public Defender,
and Andrea S. Manthorne, Special
Assistant Public Defender, Bartow, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Dawn A. Tiffin, Assistant
Attorney General, Tampa, for Appellee.

SILBERMAN, Judge.

Percy Octavio Wingo appeals his convictions and sentences for burglary

of a dwelling, grand theft, and criminal mischief.  Because there was an inadequate

competency inquiry of a State's witness who was the alleged victim of the crimes and

because the trial court failed to determine whether the witness understood the duty to

tell the truth, we reverse and remand for a new trial.

Wingo was charged with the burglary of Audra Mullins' residence, along with charges of grand theft of property from her dwelling and criminal mischief for damage to the residence or its contents. Wingo filed a motion requesting that the trial court adopt a finding of incompetency made as to Mullins in two pending criminal cases against her or, in the alternative, that she be evaluated for competency. Wingo attached to his motion an order finding Mullins incompetent to proceed to trial due to mental illness and a second order adopting the order of incompetency in her second case. The order of incompetency required her to remain in outpatient treatment for mental illness at Peace River Center and to take psychotropic medication as prescribed by her attending psychiatrist.

Prior to Mullins' testimony at trial, the trial court conducted a brief competency inquiry. Although there was a reference that the court had questioned Mullins at some point in the past,[1] at trial the State and defense agreed that the court needed to inquire into her competency to testify. Mullins responded to the trial court's questions regarding her name, age, address, and where she worked. Upon questioning about her pending criminal case, she informed the court that her case was still pending but that she had not been to any appointment for mental health treatment and that she was not taking any medication. She denied that she suffered from any mental illness.

Upon questioning by defense counsel, Mullins said that she did not know why she was found incompetent to proceed and that she never got any results from Peace River. The trial court then asked if she had dealings with Peace River before, if

---

[1]Our record contains no evidence of any prior questioning.

she had ever been committed to a mental institution against her will, if she had ever been found incompetent in any other setting, if she had ever been Baker Acted, and if she had ever been prescribed any type of psychotropic medication. To each question Mullins responded, "No, sir."

The trial court then stated, "I'm going to let her testify. She's oriented to time and place. She's able to describe events in her life in reasonable detail. Seems alert and oriented." However, Mullins was not questioned regarding her understanding of the nature of the oath or the moral obligation to tell the truth, and the trial court made no findings in that regard.

Mullins testified for the State. She was in jail when the burglary occurred, and she was the only witness to testify that Wingo did not have permission to enter her residence. The point of entry was a broken window. About a month after the burglary, Mullins informed a detective that she found dried blood on one of the vertical blinds hanging inside the broken window. A DNA profile from the blood on the vertical blind matched Wingo's DNA profile.

Wingo's theory of defense was that Mullins hired him to break into her home because she wanted to blame the burglary on a woman named Valentine Taylor who was the wife of one of Mullins' former boyfriends. Mullins had a contentious relationship with Taylor, and Taylor had an injunction entered against Mullins. In fact, Mullins originally told a detective that she believed her former boyfriend and Valentine Taylor committed the burglary.

Mullins denied that she hired Wingo to break into her home and denied that she knew Wingo. A Facebook account in her name reflected that she sent a friend

- 3 -

request to Wingo and that he accepted the request. Mullins claimed that the account was a fake account that someone else created and that she had another Facebook account that was her real account.

With respect to the grand theft charge, Mullins was also the only person to testify that a television, laptop computer, and a new bicycle were missing from her residence. The allegedly stolen property was never recovered.

Wingo preserved the issue of Mullins' competency by motion prior to trial and by requesting a competency determination at trial prior to Mullins' testimony. A witness is presumed competent to testify until a party places competency at issue. See § 90.601, Fla. Stat. (2013); Z.P. v. State, 651 So. 2d 213, 213-14 (Fla. 2d DCA 1995); State v. Green, 733 So. 2d 583, 584 (Fla. 1st DCA 1999). Wingo placed Mullins' competency at issue by informing the trial court that Mullins had been found incompetent to proceed to trial in two criminal cases the State was prosecuting against her and by challenging her ability to testify competently at trial. "A witness is incompetent to testify if the trial court determines the witness is (1) unable to communicate to the jury; (2) unable to understand the duty to tell the truth; or (3) unable to perceive and remember the events." Rutherford v. Moore, 774 So. 2d 637, 646 (Fla. 2000); see also §§ 90.603, 90.604.

In Hammond v. State, 660 So. 2d 1152, 1156 (Fla. 2d DCA 1995), the defense placed at issue the competency of three teenagers who were mentally challenged. This court determined that the trial court failed to address the three factors required for competency and "failed to make the specific determinations necessary to find these mentally challenged youth competent" to testify. Id.; see also Simmons v.

- 4 -

State, 683 So. 2d 1101, 1104 (Fla. 1st DCA 1996) ("In Hammond, the trial court erred because it did not address the three factors required to determine competency."); Coney v. State, 643 So. 2d 654, 655 (Fla. 3d DCA 1994) (determining that in addition to failing to "adequately inquire into the victim's competency *at the time of trial*," the error "was further exacerbated by the fact that no finding was made that the victim understood the obligation to tell the truth").

Here, no inquiry was made regarding Mullins' ability to understand the duty to tell the truth, and nothing indicated that she understood the duty to tell the truth. The trial court made no findings in this regard but allowed her to testify. The State argues that even if the trial court's inquiry into Mullins' competency to testify was inadequate, the error was harmless. We disagree.

Although there was physical evidence that tied Wingo to the scene, Mullins was the only person to testify that Wingo did not have permission to enter her residence. She was also the only person who could identify the items stolen from her residence that were never recovered. Although she was able to relate her story to the jury, nothing indicated whether she understood the duty to tell the truth. Therefore, we reverse Wingo's convictions and sentences and remand for a new trial. See Z.P., 651 So. 2d at 214 (reversing and remanding when the trial "court's inadequate inquiry and failure to make competency findings" could not be considered harmless because the child was the State's only eyewitness).

Reversed and remanded for a new trial.


WALLACE and MORRIS, JJ., Concur.